UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL E. CRITTENDON,

       Petitioner,                         Civil No. 04-CV-40197-FL
                                             HONORABLE PAUL V. GADOLA
v.                                      UNITED STATES DISTRICT JUDGE

MILLICENT WARREN,

       Respondent,

_____/

## <u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>

      Michael E. Crittendon, ("petitioner"), presently confined at Camp Kitwen in Painesdale, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for second-degree murder, M.C.L.A. 750.317; and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons stated below, the petition for writ of habeas corpus is denied.

## I.    Background

      Petitioner was convicted following a jury trial in the Wayne County Circuit Court. The convictions arose from the shooting death of Torrence "T.J." Foster at the home of petitioner's uncle, Ronald Wilson, on Girardin Street in Detroit, Michigan on December 21, 1997.

      Nelson Williams was petitioner's cousin. Williams testified that he was playing blackjack with the victim at Wilson's house when petitioner arrived. Petitioner joined the card game with Williams and the victim.

Williams testified that a 9 mm. handgun was sitting on the table where he, the victim, and petitioner were playing cards. Williams testified that after the three men played cards for thirty minutes, petitioner picked up the gun and shot the victim in the neck. The victim grabbed his neck and stood up. Petitioner then shot the victim in the back.

Gregory White testified that he overheard an exchange of words between petitioner and the victim prior to the shooting. White observed petitioner pick up the gun from the table and heard the gun "cock." White testified that petitioner and the victim did not struggle over the weapon. Petitioner shot the victim in the jaw, causing the victim to fall into a chair. The victim then stood up and turned away, at which time, petitioner shot him in the back.

After the shooting, petitioner, while waving the gun, ordered his cousins to help him clean up the blood, because they were "family." Williams testified that he helped petitioner place the victim's body in a sheet and put it in a van. Williams also helped petitioner clean up the blood. White testified that he and petitioner dumped the victim's body in an alley. Williams and White both testified that petitioner and the victim had a dispute about one to two years prior to the shooting.

The medical examiner testified that the victim died from gunshot wounds to his face and lower back. The medical examiner indicated that the victim's head had been crushed after his death, possibly as the result of being run over by a motor vehicle. Police obtained an arrest warrant for petitioner on December 27, 1997, but were unable to locate petitioner when they went to arrest him at his home in Southfield, Michigan. Petitioner was arrested in Flint, Michigan three and a half years later, where he was using the false name Dallas Malone.

2

Petitioner testified that he returned to the Detroit area after exhausting a golf scholarship at Alabama State University. Petitioner went to the Girardin house on the night of December 21st, because he had sold clothes to James White's mother and White was supposed to pay petitioner.

Petitioner testified that an argument started during the card game because Williams accused him of cheating. Petitioner testified that the victim was holding the gun which had previously been on the table and threatened to kill petitioner. Petitioner lunged at the gun. Petitioner testified that he and the victim struggled over the weapon and the gun discharged as the victim backed away. The victim then reached for a shotgun in the corner of the room. Petitioner fired a shot and the victim fell into a chair. Petitioner testified that he did not aim the gun, claiming that he fired it simply to scare the victim. Petitioner claimed that the first shot was an accident and that he was merely protecting himself.

Petitioner's conviction was affirmed on appeal. *People v. Crittendon,* 239333 (Mich.Ct.App. July 15, 2003); *lv. den.* 469 Mich. 1029; 679 N.W. 2d 65 (2004)(Cavanagh and Kelly, JJ, would grant leave to appeal). Petitioner now seeks the issuance of a writ of habeas corpus. For purposes of judicial clarity, the Court will paraphrase petitioner's two claims, rather than recite them verbatim:

I. Petitioner was denied a fair trial by prosecutorial misconduct.
II. Petitioner was denied the effective assistance of trial counsel.

**II.    Standard of Review**

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

3

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

## III.     Discussion

### A.     Claim # 1.  The prosecutorial misconduct claims.

Petitioner first claims that he was deprived of a fair trial due to several instances of prosecutorial misconduct.

Respondent contends that petitioner's claims are procedurally defaulted, because he failed to object to the prosecutor's comments at trial and the Michigan Court of Appeals relied on this failure to object as a basis of rejecting petitioner's prosecutorial misconduct claims.

4

In this case, petitioner claims that his trial counsel was ineffective for failing to object to the prosecutorial misconduct. (*See* Issue II, *infra*). Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would simply be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

When a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d 1348, 1355-56 (6th Cir. 1993). Because this case is a habeas case and is not a direct appeal, the inquiry into this issue is less stringent. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 708 (E.D. Mich. 2004). When analyzing a claim of prosecutorial misconduct, a court must initially decide whether the challenged statements were improper. *Boyle v. Million*, 201 F. 3d 711, 717 (6th Cir. 2000). If the conduct is improper, the district court must then examine whether the statements or remarks are so flagrant as to constitute a denial of due process and warrant granting a writ. *Id.* In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and, except in the sentencing phase of a capital murder case, the strength of the competent proof against the accused.

5

*Serra,* 4 F. 3d at 1355-56.

Petitioner first claims that the prosecutor denigrated the concept of presumption of innocence when he made the following remarks in his closing argument:

> "[T]he presumption of innocence doesn't mean that the defendant is innocent. It's just sort of like a rule that you play ball with. It's like you don't call the pitch whether it's a ball or strike until it's over the plate. Presumption of innocence just means that until you go into the jury room and you discuss the evidence. And at the point that you decide that the evidence proves him beyond a reasonable doubt, the presumption of innocence disappears. It's nothing magical about it.
> (T. 09/04/2001, pp. 82-83).

The prosecutor's comments in this case were not improper. When viewed in context, the prosecutor's comments were an accurate reflection of the idea that the presumption of innocence surrounding a defendant in a criminal prosecution continues to operate until overcome by proof of guilt beyond a reasonable doubt. *See United States v. Fleischman,* 339 U.S. 349, 363 (1950). Petitioner is not entitled to habeas relief because in the context of his comments, the prosecutor did not undermine the concept of the presumption of innocence. *See Bowling v. Parker,* 344 F. 3d 487, 513 (6th Cir. 2003). Moreover, the prosecutor's remarks regarding the presumption of innocence did not deprive petitioner of a fair trial because the prosecutor went on to remind the jury that the prosecution had the burden of proving petitioner guilty beyond a reasonable doubt. *See Patton v. Mullin,* 425 F. 3d 788, 813 (10th Cir. 2005). Finally, the prosecutor's comments concerning the presumption of innocence did not render petitioner's trial fundamentally unfair in light of the fact that the trial court gave the jury the correct instruction on the presumption of innocence. *See Kellogg v. Skon,* 176 F. 3d 447, 451 (8th Cir. 1999).

Petitioner next claims that the prosecutor argued that petitioner should be convicted

6

because he was selling clothes to known drug dealers.  Petitioner claims that the prosecutor was improperly arguing to the jury that they should find him guilty by association.

The Michigan Court of Appeals rejected this claim, finding that the prosecutor's remarks in context were merely an attempt to rebut petitioner's efforts to portray himself as a good college student who had no involvement with narcotics and was simply caught at the wrong place at the wrong time. *People v. Crittendon,* Slip. Op. at * 2.

In this case, the prosecutor's comments about petitioner's associations with drug dealers was a proper means of countering petitioner's testimony that he was a law-abiding citizen. *Cf. United States v. Sexton,* 119 Fed. Appx. 735, 745 (6th Cir. 2005)(government's cross-examination of character witnesses at trial for conspiracy to distribute cocaine regarding defendant's friendship with known cocaine dealers and users was permissible to impeach witnesses' testimony that defendant was a law-abiding citizen).

Petitioner next contends that the prosecutor infringed upon his Fifth Amendment right to remain silent by arguing that petitioner failed to come forward and inform the police that he had shot the victim in self-defense.  The Michigan Court of Appeals rejected this claim, finding that the prosecutor specifically used petitioner's pre-arrest silence to impeach his credibility regarding his claim of self-defense. *People v. Crittendon,* Slip. Op. at * 2.

The Supreme Court has held that use of a defendant's pre-arrest silence for impeachment purposes does not violate the Fifth Amendment right against self-incrimination or the Fourteenth Amendment right to due process. *Jenkins v. Anderson*, 447 U.S. 231, 238-39 (1980)  In addition, in the absence of any indication that a criminal

7

defendant had received his *Miranda* warnings, the use of post-arrest silence to impeach a defendant's credibility when that defendant chooses to take the witness stand does not violate the Due Process Clause. *See Fletcher v. Weir,* 455 U.S. 603, 606-07 (1982).  In *Fletcher,* the Supreme Court held that it was not unconstitutional for a prosecutor to use the defendant's post-arrest silence for impeachment purposes, where the defendant testified at trial that he stabbed the victim in self-defense and that the stabbing was accidental. *Id.*

In the present case, petitioner testified that he shot the victim in self-defense. References to petitioner's pre-arrest silence would have been permissible under *Jenkins* to impeach his credibility.  When viewed in the overall context, the comments about petitioner's silence appears to have been used by the prosecutor to cast doubt on petitioner's claim of self-defense and not as substantive evidence of petitioner's guilt. *See Seymour v. Walker,* 224 F. 3d 542, 560 (6th Cir. 2000).

Moreover, assuming that the prosecutor used petitioner's pre-arrest silence as substantive evidence of guilt, he would still not be entitled to habeas relief.  Although the Sixth Circuit has held that the use of a defendant's pre-arrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination, *See Combs v. Coyle,* 205 F. 3d 269, 283 (6th Cir. 2000), the Sixth Circuit further acknowledged that the Supreme Court in *Jenkins* never addressed the issue of whether the use of pre-arrest silence as substantive evidence violated the Fifth Amendment. *Id.* at 281.  Because the Supreme Court has never held that the use of a defendant's pre-arrest silence as substantive evidence violates the Fifth Amendment, petitioner would not be entitled to habeas relief, assuming that his pre-arrest silence was used for proving his substantive

8

guilt. *See Cameron,* 348 F. Supp. 2d at 841-42.

Petitioner lastly claims that the prosecutor improperly bolstered the testimony of prosecution witnesses by implying that their testimony would have been corroborated by James White and Ronald Wilson, even though these two men did not testify at trial.

Although finding these comments to be improper, the Michigan Court of Appeals ruled that they were cured by the trial court's instructions to the jury that they must decide the facts of the case, that they should make this decision based solely on the evidence admitted at trial, and that the attorneys' arguments were not evidence. The trial court also instructed the jury on the presumption of innocence and the burden of proof. *People v. Crittendon,* Slip. Op. at * 3. The Michigan Court of Appeals further noted that the prosecutor's own comments acknowledged that James White was not present at the time of the shooting and had merely heard an account of the shooting from others. *Id.*

It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000). In this case, however, the prosecutor's arguments concerning witnesses who did not testify at trial did not prejudice petitioner, where the jury was instructed that the attorneys' statements were not evidence. *See United States v. Campbell,* 317 F. 3d 597, 606-07 (6th Cir. 2003). Moreover, even if the prosecutor's comments amounted to improper vouching, they did not deprive petitioner of a fair trial so as to entitle him to habeas relief, in light of the trial court's instructions, as well as the amount of evidence against petitioner. *See Knapp v. White,* 296 F. 3d 766, 780 (E.D. Mich. 2003). Petitioner is therefore not entitled to habeas relief on his first claim.

**B.      Claim # 2.  The ineffective assistance of counsel claims.**

9

Petitioner next claims that he was denied the effective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Second, the defendant must show that such performance prejudiced his defense. *Id*.

Petitioner first contends that his attorney was ineffective for failing to request an instruction on the defense of imperfect self-defense.  The Michigan Court of Appeals rejected petitioner's claim, finding that under Michigan law, the theory of imperfect self-defense was not applicable in the present case.  In so ruling, the Michigan Court of Appeals noted that the prosecution's witnesses testified that although petitioner  was the initial aggressor, he did not act in self-defense.  Petitioner testified that the victim was the initial aggressor.  Thus, under the theories of both the prosecution and the defense, the elements for imperfect self-defense were not present in this case and trial counsel was therefore not ineffective for failing to advance this defense. *People v. Crittendon,* Slip. Op. at * 4.

The Michigan Supreme Court has not yet recognized the doctrine of imperfect self-defense as a defense. *See People v. Posey*, 459 Mich. 960; 590 N.W. 2d 577 (1999).  The Michigan Court of Appeals, however, has recognized imperfect self-defense as a qualified defense that can mitigate a murder charge to voluntary manslaughter.  This defense is available where the defendant would have been entitled to raise the theory of self-defense had he not been the initial aggressor. *People v. Kemp*, 202 Mich. App. 318, 323; 508 N.W.

10

2d 184 (1993).  A defendant is not entitled to invoke the doctrine of imperfect self-defense if he initiated the confrontation between the victim and himself with the intent to kill or do great bodily harm, even if, at the time he killed the victim, the defendant honestly and reasonably believed that his life was in danger. *Id.* at 324.  The imperfect self-defense theory is also unavailable where the defendant makes a decision to kill the victim without being in a position where it was immediately necessary. *People v. Butler*, 193 Mich. App. 63, 67; 483 N.W. 2d 430 (1992).  Finally, imperfect self-defense is not available if the defendant responded to the victim's aggression with excessive force. *People v. Kemp*, 202 Mich. App. at 325; *See also Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 604 (E.D. Mich. 2001).

In this case, there was evidence that petitioner used excessive force in repelling any alleged aggression by the victim, in light of the fact that petitioner shot the victim an additional time in the back while he was already incapacitated.  There was also evidence that the victim's head was crushed after the shooting, possibly by a moving car.  Because the facts in this case suggest that petitioner acted with excessive force in repelling any alleged aggression by the victim, he was not entitled under Michigan law to an instruction on the imperfect self-defense doctrine. *Johnson,* 159 F. Supp. 2d at 605.  In light of the fact that the evidence here did not support an imperfect self-defense theory, counsel was not ineffective for failing to pursue such a defense. *See Mirzayance v. Hickman,* 66 Fed. Appx. 676, 683 (9th Cir. 2003).

Petitioner also claims that his trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct in this case.  Because the prosecutor's questions or remarks did not prejudice petitioner so as to deprive him of a fair trial, any claim that

11

counsel rendered ineffective assistance by failing to object to the prosecutor's remarks must also be rejected. *See Millender v. Adams,* 187 F. Supp. 2d 852, 876 (E.D. Mich. 2002); *aff'd* 376 F. 3d 520 (6th Cir. 2004); *cert den.* 125 S. Ct. 1645 (2005). Petitioner is not entitled to habeas relief on his second claim.

## IV.    ORDER

Accordingly, **IT IS HEREBY ORDERED** that the petition for writ of habeas corpus is **DISMISSED WITH PREJUDICE** pursuant to Rule 4 of the Rules Governing § 2254 cases.

**IT IS FURTHER ORDERED** that if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a MOTION for a COA within **THIRTY (30) DAYS** of filing a Notice of Appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States,* 310 F. 3d 900, 903 (6th Cir. 2002)("*We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA.*")(emphasis added)). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **TWENTY (20) DAYS** of service of Petitioner's motion for a COA.


DATED:  February 28, 2006          s/Paul V. Gadola
                                   HONORABLE PAUL V. GADOLA
                                   UNITED STATES DISTRICT COURT

Certificate of Service

I hereby certify that on  March 1, 2006  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
_____ Laura G. Moody _____, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____ Michael Crittendon _____.


s/Ruth A. Brissaud_____
Ruth A. Brissaud, Case Manager
(810) 341-7845

13